IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 5th LLC, )<br>)<br>　　Plaintiff, )<br>)<br>v. )<br>)<br>KEMAH CAPITAL HOLDINGS, LLC )<br>d/b/a KEMAH MARINE and )<br>CLEAR SPRING PROPERTY and )<br>CASUALTY COMPANY, )<br>)<br>　　Defendants. ) | Case No. CIV-25-364-D |

## ORDER

Before the Court is Defendant Kemah Capital's Motion to Dismiss the First Amended Complaint [Doc. No. 15].[1] Plaintiff responded [Doc. No. 20],[2] to which Defendant filed a reply [Doc. No. 23]. Defendant seeks dismissal under FED. R. CIV. P. 12(b)(1), 12(b)(2), and 12(b)(6). The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff brought this action against Defendants in Oklahoma County state court on December 20, 2023 [Doc. No. 1-2]. The case was removed to this Court on March 28, 2025 [Doc. No. 1]. In its amended complaint, Plaintiff asserts a claim for breach of contract against both Defendants [Doc. No. 12]. In the instant motion, Defendant Kemah moves to

---

[1] In the instant motion, Defendant asserts that its name is improperly reflected in the petition. In this Order and all further filings in this case, the caption shall be corrected to reflect Defendant's proper name as reflected in the updated caption herein.

[2] Defendant Clear Spring Property and Casualty Company (Clear Spring) also filed a response to Defendant Kemah Capital's (Kemah) motion to dismiss, agreeing that Defendant Kemah should be dismissed from this action [Doc. No. 17].

1

dismiss the claim against it arguing that the Court lacks personal jurisdiction over it; the Court lacks subject matter jurisdiction over the action; and Plaintiff fails to state a claim upon which relief can be granted.

## PLAINTIFF'S ALLEGATIONS

At issue here is an insurance policy Plaintiff purchased for its Moonen 83 yacht (the Yacht). Plaintiff alleges that Kemah and Clear Spring issued an insurance policy (the Policy) for the Yacht providing coverage from October 27, 2022, through October 27, 2023 [Doc. No. 12, ¶ 6]. On or about December 24, 2022, the Yacht was damaged from seawater entering the vessel—damage that Plaintiff alleges is covered under the Policy. *Id.* ¶ 23.

Plaintiff filed a claim under the Policy, but the claim was denied three separate times. *Id.* ¶¶ 24-26. Each denial letter mentioned Kemah; was signed by Karen MacMonagle, a claims manager who held herself out as a "Representative of Kemah Marine on behalf of Clear Spring Property & Casualty Insurance"; and copied Daniel Hatch, a Kemah employee, on the email containing the letter. *Id.* ¶¶ 27-30. Further, the first denial letter stated that Kemah, on behalf of Clear Spring, completed the investigation and denied coverage under the Policy for Plaintiff's claim. *Id.* ¶ 27. The second denial letter stated that Kemah affirmed its denial of Plaintiff's claim. *Id.* ¶ 28. After the second denial, Kemah's representative, Ms. MacMonagle, stated that she "d[id] not see a reason to have a call to discuss the claim" because they "have made their position clear and have sent two denial letters." *Id.* ¶ 29.

Kemah asserts that it entered into an agreement with Clear Spring whereby Kemah "'would market, broker and underwrite insurance on Clear Spring's behalf' and that

2

'Kemah Capital was authorized to underwrite policies on Clear Spring's behalf, but not to adjust, settle, or deny any claims.'" *Id.* ¶ 14 (quoting [Doc. No. 10, at 1, 3]). Plaintiff claims it did not know the relationship between Kemah and Clear Spring prior to the issuance of the Policy and is still unaware of the nature of this relationship. *Id.* ¶ 15.

Plaintiff alleges that the handling of its claim was done in breach of the implied covenant of good faith and fair dealing and was done in bad faith. *Id.* ¶ 31.

## DISCUSSION

### I.  Kemah is subject to personal jurisdiction in Oklahoma.

"Although plaintiff bears the burden of establishing personal jurisdiction over defendant, . . . in the preliminary stages of litigation this burden is 'light.'" *Intercon, Inc. v. Bell Atl. Internet Sols.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "[A] defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable'" to defeat Plaintiff's prima facie showing. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

"The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947)).

In considering evidence on a motion challenging personal jurisdiction, the Tenth Circuit has described the role of a district court as follows:

> [A] district court relying on documentary evidence in its consideration of a motion to dismiss [for lack of personal jurisdiction] may not weigh the factual evidence. Thus, the determination involves an application of the law to the facts as set forth in the affidavits and complaints, favoring the plaintiff where a conflict exists, as well as a determination as to the legal sufficiency of plaintiff's jurisdictional allegations in light of the facts presented.

*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon*, 205 F.3d at 1247 (citing *Far West Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)). "In Oklahoma, this two-part inquiry collapses into a single due process analysis, as the current Oklahoma long-arm statute provides that '[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.'" *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416-17 (10th Cir. 1988) (quoting OKLA. STAT. tit. 12, § 2004).

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and

4

the forum [s]tate.'" *Intercon*, 205 F.3d at 1247 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 191 (1980)). Minimum contacts may be established in two ways:

> First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.

*Id.* (quotations and citations omitted).

### A. Kemah is not subject to general personal jurisdiction in Oklahoma.

"General jurisdiction arises where the defendant's contacts with the forum state are 'so continuous and systematic as to render [it] essentially at home' there." *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation is at home in its "place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "[B]ut in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that [s]tate.'" *Id.* (citing *Daimler*, 571 U.S. at 139 n.19). "The case law sets the bar quite high, however, denying general jurisdiction absent substantial sales." *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (citations omitted).

Kemah is incorporated in Texas and alleges that its principal place of business is in Texas. Although Plaintiff asserts in its amended complaint that Kemah regularly conducts business in Oklahoma, Kemah denies this claim and further explains that it has no offices

5

in Oklahoma, it has no bank accounts in Oklahoma, and its personnel do not regularly travel to Oklahoma. In its response to Kemah's motion to dismiss, Plaintiff does not address Kemah's argument that it is not subject to general jurisdiction in Oklahoma.

Kemah is not incorporated in Oklahoma nor is its principal place of business in Oklahoma. Further, neither party has shown that this is one of those "exceptional cases" where Kemah's contacts with Oklahoma render it essentially at home here. Accordingly, the Court agrees that Plaintiff has failed to show Kemah is subject to general personal jurisdiction in Oklahoma.

### B. Kemah is subject to specific personal jurisdiction in Oklahoma.

Specific jurisdiction requires a two-step analysis:

> First, [the court] must consider whether the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there. Second if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075-76 (10th Cir. 2004) (quotations and citations omitted).

#### i. Minimum contacts

When evaluating minimum contacts, the court "examine[s] whether the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate.'" *Id.* at 1076 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Minimum contacts exist if "the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant *himself*

6

that create a substantial connection with the forum state." *Id.* (quoting *OMI Holdings*, 149 F.3d at 1091). "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle*, 102 F.3d at 456 (quoting *Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1166 (10th Cir. 1982)).

Typically, "[a] contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish minimum contacts with the forum." *Benton*, 375 F.3d at 1077 (citing *Burger King*, 471 U.S. at 473). But "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Id.* (quoting *Burger King*, 471 U.S. at 473). Several factors "must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479. These include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*

Kemah asserts that Plaintiff does not allege facts sufficient to establish that it "purposefully directed" its activities to Oklahoma and does not allege any ongoing business relationship or negotiations between the parties. But Plaintiff's amended complaint alleges just this—it contends that Kemah "marketed, underwrote, and issued a marine insurance policy to Plaintiff"; "branded every page of the Policy with 'Kemah Marine, a division of Kemah Capital,' and used a Kemah-controlled domain (yachtclaims@kemahcapital.com) for submission of claims" [Doc. No. 20 (quoting Doc. No. 12)]. Further, a Kemah employee

7

was copied on each of the three denial letters, and the claims manager, Ms. MacMonagle, signed each letter as a representative of Kemah. Kemah's actions regarding the insurance Policy, plus the allegation that it was involved in denial of the claim—the precise event giving rise to the breach of contract claim—are sufficient to establish that Kemah purposefully availed itself of the privilege of doing business in Oklahoma, and Plaintiff's claim arises out of those actions.

In its motion to dismiss, Kemah provides an affidavit from Daniel Hatch, Kemah's Claims Analyst and Assistant Chief Operating Officer, stating, among other things, that neither Clear Spring nor Ms. MacMonagle were authorized to deny claims on Kemah's behalf. The Court notes that Plaintiff has a duty to "support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik*, 887 F.2d at 1376 (citing *Becker*, 165 F.2d at 141). Here, Plaintiff responds to Kemah by reiterating the allegations set forth in its amended complaint regarding Kemah's alleged role in the denial of its claim. *See* [Doc. No. 20, at 2].

The Court finds a conflict here as to Kemah's role in the denial of Plaintiff's insurance claim. In "favoring the plaintiff where a conflict exists," the Court finds that sufficient facts exist to support specific personal jurisdiction over Kemah in this Court. *Ten Mile Indus. Park*, 810 F.2d at 1524. Thus, Plaintiff has established that Kemah has sufficient minimum contacts with the forum state.

### ii. Reasonableness

Next, the Court considers "whether [its] exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings*, 149 F.3d at 1091 (citing *Asahi Metal Indust. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)). Defendant bears the burden and "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In making this determination, the following factors are considered:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113).

Despite it being Defendant's burden, Kemah does not address the factors listed above in its motion to dismiss. Plaintiff does discuss the factors, ultimately arguing that personal jurisdiction over Kemah is reasonable. First, Plaintiff states that it is not unduly burdensome for a Texas entity to litigate in Oklahoma. Further, Oklahoma has a strong interest in protecting its residents and the Yacht is owned by an Oklahoma LLC. Finally, Plaintiff asserts that Kemah's co-defendant has already answered this claim in this Court and fragmenting litigation would weigh against judicial efficiency.

Kemah's reply briefly mentions the applicable factors by asserting that Oklahoma is not the most convenient location for litigating this claim because the Yacht is docked in Florida and everything related to the ship is outside of Oklahoma. But Kemah fails to

consider other factors, including the fact that Plaintiff's alleged harm was felt in Oklahoma. Kemah's argument falls short of presenting a "compelling case" as to why jurisdiction in Oklahoma is unreasonable. Thus, Kemah is subject to specific personal jurisdiction in this Court.

**II.     The Court has subject matter jurisdiction over this matter.**

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001)). "[I]n reviewing a facial attack 'a district court must accept the allegations in the complaint as true.'" *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (quoting *Holt*, 46 F.3d at 1003). "In reviewing a factual attack, 'a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends,' which does not allow a reviewing court to 'presume the truthfulness of the complaint's factual allegations." *Id.* (quoting *Holt*, 46 F.3d at 1003).

"Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *SK Finance SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997) (citing *Holt*, 46 F.3d at 1275)). "However, 'a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the

jurisdictional question is intertwined with the merits of the case.'" *Paper, Allied-Indus., Chem. & Energy Workers Intern. Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (quoting *Holt*, 46 F.3d at 1003). "[T]he underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000) (quotation and citation omitted).

Kemah asserts that this Court lacks subject matter jurisdiction over this matter because Plaintiff failed to establish it suffered an injury in fact that is fairly traceable to Kemah's conduct. Specifically, Kemah alleges that any denial letter received by Clear Spring was not authorized to be sent on its behalf. Further, neither Clear Spring nor its reinsurer, Talisman Casualty Insurance Company (TCIC), were permitted to hold themselves out as agents of Kemah. Therefore, Plaintiff's alleged harm stemming from the denial of its insurance claim cannot be fairly traceable to Kemah.

The parties agree that Kemah asserts a factual challenge to Plaintiff's standing. Thus, the Court may consider facts outside the four corners of the complaint. The underlying issue of whether Kemah denied Plaintiff's insurance claim goes to the heart of its breach of contract claim. Therefore, because "resolution of the jurisdictional question is intertwined with the merits of the case," the Court analyzes this claim under the Rule 12(b)(6) standard. *Paper, Allied-Indus., Chem. & Energy Workers Intern. Union*, 428 F.3d at 1292 (quoting *Holt*, 46 F.3d at 1003).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court will accept as true all well-

pled factual allegations and construe them in the light most favorable to the non-movant. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> To establish standing, a plaintiff must demonstrate the presence of the following:
>
> (1) injury in fact—meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct—meaning that the injury fairly can be traced to the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision—meaning that the prospect of obtaining relief from . . . a favorable ruling is not too speculative.

*Bd. Of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quotation and citation omitted). "On the second requirement, to show that an injury is 'fairly traceable' to the challenged conduct, a plaintiff must allege 'a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802, 814 (10th Cir. 2021) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)).

In support of its motion to dismiss, Kemah attaches a declaration from Mr. Hatch explaining that Kemah and Clear Spring entered into an agreement whereby Kemah would market, broker, and underwrite insurance policies on behalf of Clear Spring. He asserts that Kemah's only connection to Oklahoma is that it issued Plaintiff's Policy on behalf of Clear Spring. A third-party adjuster was supposed to receive the claim and adjust it, but instead Clear Spring and its reinsurer adjusted the claim themselves.

Plaintiff avers that Mr. Hatch's declaration is directly contradicted by the record. Specifically, Plaintiff points to the Policy which includes Kemah's branding and an email address with a Kemah domain for policyholders to submit claims to, the fact that the denial letters were sent by a representative of Kemah marine, and Mr. Hatch, a Kemah employee, was copied on the denial letters. The crux of Plaintiff's claim is that it filed an insurance claim under the Policy, the claim was denied three times, Kemah was involved in the denial of those claims, and it was harmed as a result of the denial. Accepting Plaintiff's allegations as true (Kemah played a role in denying Plaintiff's claim and as a result Plaintiff was harmed), clearly the injury would be fairly traceable to those parties involved in denying the claim—including Kemah.

Thus, accepting Plaintiff's allegations as true, the Court finds that Plaintiff has standing to assert its breach of contract claim against Kemah.

### III. Plaintiff's breach of contract claim survives Kemah's motion to dismiss, but its request for punitive damages is dismissed.

As described above, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court will

13

accept as true all well-pled factual allegations and construe them in the light most favorable to the non-movant. *Peterson*, 594 F.3d at 727 (10th Cir. 2010). The Court analyzes Defendant's motion to dismiss under the standard of review set forth above.

### A. The Court applies maritime law and New York law to Plaintiff's breach of contract claim.

First, Kemah argues that this Court should apply maritime law, or where that does not apply, New York law, pursuant to the parties' choice-of-law provision. Plaintiff does not dispute this and contends that it can establish its breach of contract claim under both maritime and New York law. Accordingly, the Court finds that maritime law shall apply to Plaintiff's breach of contract claim and, otherwise, New York law applies.

### B. Plaintiff asserts facts sufficient to support a finding that Kemah intended to bind itself to the contract.

"An agent executing a contract on behalf of a disclosed principal is not liable for a breach of the contract unless it clearly appears that he or she intended to bind himself or herself personally." *Y.B. Assoc. Grp, LLC v. Rubin*, 216 A.D.3d 851, 853, 189 N.Y.S.3d 571 (quotation and citation omitted). "[T]here [must be] clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Id.* (quoting *Stamina Prods., Inc. v. Zintec USA, Inc.*, 90 A.D.3d 1021, 1022, 935 N.Y.S.2d 629).

Kemah asserts that it was a disclosed agent of the principal, Clear Spring, and therefore cannot be liable under a contract between the principal and a third party. Plaintiff argues that whether Kemah was a disclosed agent or whether it acted outside the scope of its authority are factual questions that are not appropriate for resolution at the motion to

14

dismiss stage. In support, Plaintiff provides the following: (1) the insurance Policy contains statements suggesting that Kemah and Clear Spring were both providing insurance, but a separate page states that Kemah was underwriting on behalf of Clear Spring; (2) the communications surrounding the claim were issued and signed by a representative of Kemah and a Kemah employee was copied on all emails; and (3) finally, Plaintiff alleges that Kemah wore multiple hats such as underwriter, marketer, broker, and policy administrator.

In accepting Plaintiff's allegations as true, the Court finds Plaintiff has pled a plausible claim for breach of contract against Kemah. The Court agrees that there is conflicting evidence as to whether Kemah was a disclosed agent. Specifically, Plaintiff alleges that the Policy contains language suggesting that both Kemah and Clear Spring were providing coverage, whereas a separate portion of the Policy states that Kemah was completing the underwriting on Clear Spring's behalf.

Accordingly, Plaintiff asserts facts that, if taken as true, a jury could find that Kemah meant to bind itself to the contract. Thus, Plaintiff's breach of contract claim survives Kemah's motion to dismiss.

### C.   Plaintiff's request for punitive damages is not dismissed.

Defendant also purports to seek dismissal of a claim for punitive damages. However, a request for punitive damages constitutes a prayer for relief, not a separate cause of action. *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011) ("the prayer for relief is no part of the cause of action and . . . the parties are entitled to such relief and to such judgment as the complaint . . . makes out") (internal quotation omitted); *Schoonover*

15

*v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949) (same). A Rule 12(b)(6) motion tests the sufficiency of a claim; it is not a proper mechanism for challenging a request for punitive damages. *See Douglas v. Miller*, 864 F. Supp. 2d 1205, 1220 (W.D. Okla. 2012) ("[W]hether [punitive] damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action."); *see also Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 at 508-09 (3d ed. 2004); FED. R. CIV. P. 54(c) (judgment "should grant the relief to which each party is entitled").

Accordingly, Defendant's motion to dismiss Plaintiff's request for punitive damages is denied.

**IT IS THEREFORE ORDERED** that Defendant Kemah Capital's Motion to Dismiss the First Amended Complaint [Doc. No. 15] is **DENIED**.

**IT IS SO ORDERED** this 10th day of March, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge